UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY LOSSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNION DES ASSOCIATIONS EUROPEENNES DE FOOTBALL,<br><br>　　　　Defendant. | Case No. 23-cv-06500-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Dkt. No. 20 |

Jerry Losson signed up to watch European football on UEFA.com and UEFA.tv, websites operated by defendant Union des Associations Europeennes de Football, a non-profit organization governing 55 national football associations across Europe. He alleges UEFA shared his video viewing history with Meta, among other companies, in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710(a)(4). Pending before the Court is UEFA's motion to dismiss. (Dkt. No. 20.[1]) After carefully considering the parties' submissions, and having had the benefit of oral argument on July 11, 2024, the Court GRANTS UEFA's motion to dismiss on forum non-conveniens grounds. Losson's claims are connected with the UEFA.com Terms & Conditions to which he agreed; so, the forum-selection clause requiring all disputes be brought in Switzerland applies.

## DISCUSSION

Whether a Court has personal jurisdiction "is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). "On the other hand, neither personal jurisdiction nor venue is fundamentally

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

preliminary in the sense that subject-matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both may be waived by the parties. Accordingly, when there is a sound prudential justification for doing so, . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Id.* (citations omitted). Here there is a sound prudential reason for addressing venue first because even if personal jurisdiction has not yet been established, the Court would likely need to permit jurisdictional discovery.

It is undisputed Losson agreed to UEFA.com's Terms & Conditions when he signed up with UEFA.com. It is equally undisputed those Terms & Conditions included a forum selection clause requiring all disputes in connection with the Terms & Conditions be litigated in Switzerland:

> The Terms & Conditions and the relationship between you and UEFA shall be governed by the **substantive laws of Switzerland**. All disputes in connection with these Terms & Conditions shall be submitted to the exclusive jurisdiction of the courts of Nyon, Switzerland.

(Dkt. No. 20-3 at 8.) The Terms & Conditions included a "Privacy" section that linked to UEFA's Privacy Policy and Cookie Policy and stated that by using the UEFA platforms, the user agrees to those policies. (*Id.* at 6-7.) So, UEFA moves to dismiss on the grounds of forum non conveniens, that is, that this action must be brought in Switzerland per the parties' agreement.

**A. The Forum-Selection Clause Applies to This Dispute**

As an initial matter, UEFA must show that this dispute falls within the forum-selection clause's scope. Federal contract law governs the interpretation of its scope. *See Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018), *modified by Lee v. Fisher*, 70 F.4th 1129 (9th Cir. 2023). Federal contract law "look[s] for guidance 'to general principles for interpreting contracts.'" *Id.* (cleaned up).

By its plain language, the forum-selection clause applies to all disputes "in connection with" the Terms & Conditions. The Ninth Circuit has held that "forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Yei A. Sun*, 901 F.3d at 1086. "The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Id.* "The phrase 'in connection with,' . . . is akin to the phrase 'related to,' which

2

is construed to 'apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *TMF Tr. Ltd. v. M/T Megacore Philomena,* No. CV 17-09010 AGR, 2020 WL 3064447, at *2 (C.D. Cal. Mar. 24, 2020).

Losson's claims fall squarely within the forum-selection clause's scope. His Video Privacy Protection Act claim has "some logical or causal connection" to the Terms & Conditions because they govern his access to and use of the websites which led to the alleged violations. Further, the Terms & Conditions specifically incorporate UEFA's Privacy Policy and Cookie Policy. The Privacy Policy discloses UEFA collects data about how the subscriber uses the websites. (Dkt. No. 20-4 at 3.) Indeed, the Policy specifically discloses UEFA may share a subscriber's personal data with Facebook. (*Id.* at 5.) And, Losson affirmatively opted-in to do so, pursuant to UEFA's Cookie Policy, which, again, is part of the Terms & Conditions. (Dkt. No. 20-1 ¶¶ 13-19.) So, UEFA has established Losson's claims have a logical or causal connection to the Terms & Conditions.

Losson's insistence his claims "do not relate to" the Terms & Conditions because "they have nothing to do with enforcing any particular provision of the Terms & Conditions (including the Privacy Policy and Cookie Policy) or Defendants' breach thereof" and are essentially tort claims rather than contract claims" (Dkt. No. 23 at 19) is wrong as a matter of law. As explained above, under binding Ninth Circuit law, "relating to" does not mean the dispute grew out of the contract or requires interpretation of the contract. *Yei A.Sun*, 901 F.3d at 1086; *see also Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir. 1988) (stating "forum selection clauses can be equally applicable to contractual and tort causes of action").

Losson's assertion UEFA's Terms & Conditions are a legally insufficient means to obtain consent to share his viewing history merely reinforces that his claims are logically connected to the Terms & Conditions. *See Fan v. NBA Properties Inc.,* No. 23-CV-05069-SI, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) (explaining how terms of use will be evaluated to determine whether Video Privacy Protection Act violated). Losson gained access to the websites, shared his personal data with UEFA, and provided access to Facebook (whether legal or not pursuant to Video Privacy Protection Act) through those Terms & Conditions. Again, Losson's

insistence the Court will not need to interpret the Terms & Conditions and therefore its claims are outside the clause's scope misapprehends the law: "in connection with" covers claims that are logically connected or causally related to the Terms & Conditions, not just claims that arise out of or require interpretation of the contract containing the Terms & Conditions. *See Yei A. Sun*, 901 F.3d at 1086 ("forum-selection clauses covering disputes 'arising out of' a particular agreement apply only to disputes 'relating to the interpretation and performance of the contract itself'").

*Clark-Alson v. Southwest Airlines Co.*, 440 F.Supp.3d 1089, 1094 (N.D. Cal. 2020), does not persuade the Court otherwise. There, the plaintiff alleged Southwest Airlines improperly recorded his telephone call to its frequent flyer program customer service number. *Id*. at 1092. Southwest Airlines' frequent flyer program included a forum-selection clause covering "all matters arising out of or relating to" the program's Rules and Regulations. *Id.* at 1094. The court held the plaintiff's claim did not relate to the frequent flyer program, other than that the plaintiff would not have made the call but for his enrollment in the program, a relationship too attenuated to fall within the forum-selection clause's scope. *Id.* at 1094-95. *Clark-Alson* might be on point if Losson's claims arose from a phone call he made to UEFA's customer service. But they do not. Instead, his claims arise from his use of UEFA's website—use which is logically connected and causally related to the Terms & Conditions to which he agreed in order to access the website. So, his claims fall within the forum-selection clause.

**B. The Forum-Selection Clause is Enforceable**

Courts "evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum." *Yei A. Sun*, 901 F.3d at 1087; *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49, 66 n.8 (2013) ("[T]he same standards should apply to motions to dismiss for forum non conveniens in cases involving valid forum-selection clauses pointing to state or foreign forums"). So, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine*, 571 U.S. at 62. "Only under extraordinary circumstances unrelated to the convenience of the parties" should a motion to transfer pursuant to a forum-selection clause be denied. *Id.* So, a forum-selection clause controls

> unless the plaintiff [makes] a strong showing that: (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court."

*Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1165 (9th Cir. 2020) (citations omitted).

Losson does not argue fraud or overreaching; nor does he argue contravention of a strong public policy. Instead, he argues, "he and the putative class would . . . be denied of their day in court because he would have no remedy under the laws of Switzerland." (Dkt. No. 23 at 23.) He emphasizes that Switzerland does not have a procedure comparable to the Rule 23 class action procedure available in the United States, and that UEFA complied with the Switzerland privacy laws by "providing a cookie banner that informs consumers that they are being tracked and data is being collected with an option to opt out, . . . and a Cookie Policy and Privacy Policy available on the Websites that outline how data is collected, stored, and processed." (Dkt. No. 23 at 24.) But, unsurprisingly, those arguments are not supported by citation to any caselaw. If Losson's analysis was correct, nearly no international forum-selection clause would be enforceable as most countries do not have a class action procedure. Moreover, the argument is at odds with the enforceability of class-action waivers in the United States. *See Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) (explaining the Ninth Circuit has interpreted *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011), "as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver.").

Losson's argument Switzerland's privacy law is different from the Video Privacy Protection Act fares no better. As the Ninth Circuit has held:

> Prior to *Atlantic Marine*, we held that a clause remains enforceable even when the contractually selected forum may afford the plaintiffs less effective remedies than they could receive in the forum where they filed suit. *Atlantic Marine* confirms this conclusion, and establishes that "the fact that certain types of remedies are unavailable in the foreign forum does not change the calculus if there exists a basically fair court system in that forum that would allow the plaintiff to seek some relief."

*Yei A. Sun*, 901 F.3d at 1092.  As Losson admits, Switzerland has a data protection law which "penalizes individuals responsible for failing to ensure an adequate level of data protection or for adhering to other information obligations set out under the rules."  (Dkt. No. 23 at 24.)

Finally, Losson relies on a 45 year-old case from the Third Circuit, *Copperweld Steel Co. v. Demag-Mannesmann-Bohler*, 578 F.2d 953 (3d Cir. 1978).  *Copperweld* involved a dispute arising from a contract between an American company and a German company doing business in the United States to manufacture a machine in the United States; the contract provided for disputes arising from the contract to be brought in Germany  *Id.* at 965; *Copperweld Steel Co. v. Demag-Mannesmann-Boehler*, 354 F. Supp. 571, 572 (W.D. Pa. 1973).  The district court found the forum-selection clause unreasonable and the Third Circuit affirmed.  But here, Losson decided to digitally subscribe to websites owned by the governing body of European football, itself a European entity.  The websites provide "United European Football League game updates, news, interviews, and commentary."  (Dkt. No. 11 ¶ 25.)  There is nothing unreasonable about requiring Losson to litigate his claims in Europe in these circumstances.

## CONCLUSION

Losson's claims are connected with the Terms & Conditions he expressly agreed to when he subscribed to UEFA's websites.  So, the forum-selection clause in those Terms & Conditions requiring the dispute be litigated in Switzerland applies and Losson has not shown it is unenforceable.  UEFA's motion to dismiss for forum non conveniens is therefore GRANTED.

This Order disposes of Docket No. 20.

Dated: July 11, 2024

JACQUELINE SCOTT CORLEY
United States District Judge